### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTHONY McCOY,<br>        *Plaintiff*, | |
| v. | No. 3:20-cv-01011 (JAM) |
| CARON *et al.*,<br>        *Defendants*. | |

### INITIAL REVIEW ORDER RE AMENDED COMPLAINT
### PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Anthony McCoy is a prisoner in the custody of the Connecticut Department of

Correction ("DOC"). He filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983

in which he alleged that the defendants violated his due process rights over the course of a

disciplinary hearing and an administrative segregation hearing. After an initial review, I

dismissed McCoy's claims without prejudice. *See McCoy v. Caron*, 2020 WL 6826725 (D.

Conn. 2020).

McCoy has now amended his complaint to address the deficiencies identified in my

initial review. After an initial review of the amended complaint, I conclude that McCoy's due

process claim related to the disciplinary hearing should be dismissed, but I will allow McCoy's

due process claim related to his administrative segregation hearing to go forward as to some of

the defendants.[1]

---

[1] Although McCoy also alleges state law claims for "negligence, supervision negligence, and intentional infliction of emotional distress," Doc. # 14-1 at 2, I will not address them in this ruling. The validity of any state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or a motion for summary judgment. More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the Court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

# BACKGROUND

McCoy repeats his allegations against the original fourteen defendants—Warden Caron, Captain Juan Ibes, Lieutenant Ouellette, Correctional Officer Canales, Correctional Officer Clark, Lieutenant Grimaldi, Correctional Officer Leone, Correctional Officer LaPrey, Correctional Officer Cieboter, Correctional Counselor R. Riccio, Correctional Counselor Supervisor E. Tugie, Director of Offender Classification and Population Management Dave Maiga, District Administrator William Mulligan, and Acting Commissioner Angel Quiros—and he also names a fifteenth defendant—Correctional Counselor Saunders—in the amended complaint.[2] Acting Commissioner Quiros, Director Maiga, and District Administrator Mulligan are all named in both their individual and official capacities, and the remaining defendants are named in their individual capacities.[3] McCoy asserts that the defendants violated his due process rights under the Eighth and Fourteenth Amendments, and he also brings several state law claims.[4]

The following facts are alleged in the amended complaint and are accepted as true for purposes of initial review only. McCoy's due process claims are based on two separate hearings—a disciplinary hearing and an administrative segregation hearing—that stem from the same underlying incident.

On March 13, 2020, the COVID-19 pandemic prompted a modified lockdown at the Carl Robinson Correctional Institution ("Robinson") where McCoy was housed at the time.[5] Visits to the facility were suspended, normal movement was restricted, and the dining hall was closed,

---

[2] Doc. #14-1 at 1.

[3] *Ibid.*

[4] *Id.* at 2.

[5] *Id.* at 5 (¶ 19).

with food being sent to each housing unit on trays.[6] On April 1, 2020, inmates in Buildings 3 and 4 refused their dinners in protest over "issues of the way food was being served, [and] sanitary issues of housing conditions."[7]

On April 3, 2020, at approximately 10:15pm, McCoy was on his bunk waiting for the 10:00pm headcount to clear so that he could go to his job.[8] Multiple correctional officers approached McCoy and ordered McCoy to get out of his bunk and to place his hands behind his back.[9] McCoy was placed in handcuffs and led to another building, where he was placed in "another pair of handcuffs with a black box in the middle of them, belly chains, and shackled."[10] McCoy was then taken to a waiting car and was transferred from Robinson, a level 2 facility, to Northern Correctional Institution ("Northern"), a level 5 facility, under the recommendation of Warden Caron and with the approval of Director Maiga.[11]

At Northern, McCoy was held in a three-point restraint in a holding cell by two correctional officers while a third officer removed his clothes.[12] McCoy was then placed on administrative detention status pending the outcome of an administrative segregation hearing.[13]

On April 4, McCoy received a copy of the disciplinary report.[14] On April 6, Officer Leone gave McCoy an Inmate Interview Statement Form to fill out.[15] McCoy supplied the names

---

[6] *Ibid.*

[7] *Id.* at 5 (¶ 20).

[8] *Id.* at 5-6 (¶ 21).

[9] *Ibid.*

[10] *Ibid.*

[11] *Ibid.*

[12] *Id.* at 6 (¶ 22).

[13] *Ibid.*

[14] *Id.* at 6 (¶ 23).

[15] *Id.* at 6-7 (¶ 24).

of three witnesses and requested all video evidence available.[16] McCoy states that he did not provide a statement because he "didn't know why he was in administrative detention" and because the "ticket was to[o] broad."[17]

On April 22, McCoy met with his advisor and again asked for the three witnesses whose names he provided as well as video evidence, including video from the camera that was aimed at his bunk.[18] On April 27, McCoy refused all advisors because "he didn't look at any video or evidence."[19] On April 29, Officer Clark denied McCoy's three requested witnesses, claiming that McCoy had not provided sufficient supporting information to identify them.[20]

That same day, McCoy told Officer Leone that he gave both the first and last names of the three witnesses to Officer Leone and McCoy's advisor.[21] On April 30, Officer Leone sent a note to McCoy stating that Officer Leone gave the witnesses' first names to individuals at Robinson, but Officer Clark said that the inmates had been discharged.[22] McCoy asserts that this is not true and that his wife and mother looked up all three inmates and found that they were still incarcerated.[23]

McCoy's disciplinary hearing was held on May 7, 2020.[24] At the hearing, a synopsis of certain video evidence was read, but this was not the evidence McCoy had requested.[25] McCoy

---

[16] *Ibid.*

[17] *Ibid.*

[18] *Id.* at 7 (¶ 25).

[19] *Id.* at 7 (¶ 26).

[20] *Id.* at 7 (¶ 27).

[21] *Id.* at 7 (¶ 28).

[22] *Id.* at 7 (¶ 29).

[23] *Ibid.*

[24] *Id.* at 8 (¶ 30).

[25] *Ibid.*

told the hearing officer that the video evidence from the camera aimed at McCoy's bunk was missing and that this video evidence would prove McCoy's innocence.[26] The hearing officer refused to view the video evidence and continued the hearing to the next week so that the hearing officer could speak with Captain Ibes.[27]

On May 12, the hearing officer found McCoy guilty based on the hearing officer's conversation with Captain Ibes and Captain Ibes's report stating that McCoy had a leadership role in the protest.[28] McCoy objects to Captain Ibes's report because the report was dated April 8, 2020, four days after the date of the disciplinary report and five days after McCoy was placed in administrative detention.[29] McCoy also finds fault with the decision to continue the hearing.[30]

McCoy's administrative segregation hearing was held on May 13, 2020 via videoconference.[31] Correctional Counselor Supervisor E. Tugie served as the hearing officer, and Correctional Counselor R. Riccio served as the recorder.[32] McCoy asked for his three witnesses and requested that the video from the camera pointed at his bunk be reviewed because the video evidence would allegedly show that Captain Ibes's statement was false.[33]

On May 19, McCoy received both a restrictive status notification of decision and a restrictive status report of hearing for placement or removal.[34] McCoy was placed on

---

[26] *Ibid.*

[27] *Ibid.*

[28] *Id.* at 8 (¶ 31).

[29] *Id.* at 8 (¶ 32).

[30] *Ibid.*

[31] *Id.* at 9 (¶ 36)

[32] *Ibid.*

[33] *Id.* at 9 (¶ 37).

[34] *Id.* at 10 (¶ 38).

administrative segregation.[35] The reports gave the reason for the placement as "Inmate McCoy engaged in disorderly conduct which severely interfered with the normal operations of the facility, posed a threat to the security of the facility and a risk to the staff and other inmates."[36] McCoy alleges that the video footage of him on his bunk would not show McCoy "runni[n]g his hand back and forth in front of his neck as a motion of 'no.'"[37]

As a result of the hearing decision, McCoy must complete the administrative segregation program at Northern and Garner Correctional Institution ("Garner") without receiving any disciplinary reports.[38]

DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[35] *Id.* at 10 (¶ 39).

[36] *Id.* at 10 (¶ 40).

[37] *Id.* at 10 (¶ 41).

[38] *Id.* at 10 (¶ 43).

(2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Procedural due process*

McCoy's amended complaint reiterates the same due process claims relating to the hearings that animated his original complaint. As I explained in my initial review order, the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

Moreover, in the prison context—involving prisoners whose liberty interests have already been severely restricted because of their confinement—a prisoner plaintiff who complains of adverse action without due process must show that the adverse action amounted to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, in *Sandin*, the Supreme Court concluded that a prisoner who was subject to a disciplinary term of 30 days confinement in restrictive housing did not sustain an atypical and significant hardship that constituted a deprivation of a liberty interest that would be subject to protection under the Due Process Clause. *Id.* at 486. The Supreme Court noted as well that disciplinary custody was not atypical because "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody." *Ibid.*

Following *Sandin*, the Second Circuit has explained that the "[f]actors relevant to determining whether the plaintiff endured an atypical and significant hardship include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).[39] The Second Circuit has further observed that "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (*per curiam*) (citation omitted). "Where the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64-65.

### Disciplinary hearing

In my prior initial review order, I dismissed McCoy's due process claim relating to the disciplinary hearing because the sanctions imposed—15 days of punitive segregation, running from April 3, 2020 to April 17, 2020—fell far below that 101-day period of confinement that ordinarily may give rise to a liberty interest for the purposes of a due process claim. *McCoy*, 2020 WL 6826725, at *4. As I noted in my order, McCoy's original complaint did not contain any allegations of facts to show that McCoy's conditions of confinement during this 15-day period were atypical or substantially more onerous compared to the usual restrictions of imprisonment. *See Galarza v. Erfe*, 2019 WL 121784, at *5 (D. Conn. 2019) (collecting cases). McCoy's amended complaint similarly lacks such allegations. Because McCoy's amended

---

[39] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

complaint fails to overcome the deficiencies identified in my initial review order, I will dismiss the due process claims related to the disciplinary hearing.

### Administrative segregation hearing

I dismissed McCoy's initial due process claim relating to the administrative segregation hearing because the period of McCoy's confinement in administrative segregation—63 days from his placement on May 19, 2020 until the filing of the complaint on July 20, 2020—also fell below the 101-day period of confinement set forth by the Second Circuit. *McCoy*, 2020 WL 6826725, at *4. As with his due process claim relating to the disciplinary hearing, McCoy failed in his initial complaint to allege that the conditions of administrative segregation in any way rose to the level of atypicality required to demonstrate a deprivation of a liberty interest.

McCoy's amended complaint does not state explicitly whether he is still on administrative segregation. McCoy does, however, request an injunction directing defendants to release McCoy from administrative segregation and to place him back in the general population.[40] Assuming that McCoy was still in administrative segregation as of the date of the filing of the amended complaint—January 19, 2021—McCoy has been in administrative segregation for a period of 246 days. This falls within the "intermediate duration" of between 101 and 305 days identified by the Second Circuit. *See Palmer*, 364 F.3d at 64-65. As the Second Circuit noted in *Palmer*, instances where the plaintiff's period of confinement falls within this intermediate duration require "development of a detailed record of the conditions of the confinement relative to ordinary prison conditions." *Id.* at 65; *see also Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) ("[W]e have characterized segregative sentences of 125-288 days as relatively long, and thus necessitating specific articulation of … factual findings before the

---

[40] Doc. #14-1 at 12.

9

district court could properly term the confinement atypical or insignificant.").

McCoy's amended complaint has failed to develop a detailed record; indeed, McCoy does not make any allegations relating to his conditions of confinement while on administrative segregation. But because McCoy's period of confinement falls within the intermediate period identified by the Second Circuit, I decline to dismiss McCoy's claims on an initial review order without further facts regarding the conditions of confinement, whether McCoy is still in administrative segregation, and whether he had a protected liberty interest.

Assuming McCoy's allegations meet the first step of *Sandin*, I must next consider whether the procedures in place were constitutionally sufficient. "Prior to placing a prisoner in administrative segregation, prison officials must provide 'some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to [administrative segregation,] although not necessarily a full hearing.'" *Ford v. Deacon*, 793 F. App'x 13, 17 (2d Cir. 2019) (quoting *Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017)). At this point "officials need only conduct an informal review to determine whether segregation is justified, and the final decision may rest on purely subjective evaluations and on predictions of future behavior." *Ibid.*

On the other hand, "notwithstanding the label 'Administrative Segregation,' if 'the purpose of more restrictive confinement is disciplinary or punitive,' then the heightened procedural requirements of *Wolff v. McDonnell* . . . apply." *Ellerbe v. Jasion*, 2015 WL 1064739, at *5 (D. Conn. 2015) (citations omitted). Following the Supreme Court's direction in *Wolff*, an inmate facing disciplinary proceedings "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous

10

to institutional safety or correctional goals." *Ibid.* (quoting *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)); *see also Campbell v. Lantz*, 2019 WL 6771417, at *8 (D. Conn. 2019).

The trouble here is that McCoy does not explicitly allege that his placement on administrative segregation was punitive or disciplinary in nature. The Notification of Hearing form McCoy attached to his amended complaint states that the purpose of the hearing was to determine whether McCoy's "presence in general population presents a threat to the safety and security of the institutional community due to repetitive disciplinary infractions and/or involvement in a serious incident."[41] The text of the form goes on to describe the hunger strike and McCoy's alleged involvement in it, recites McCoy's previous disciplinary history, and states that defendant Warden Caron requested McCoy be reviewed for a higher level of security due to McCoy's "actions posing a threat to the safety and security of the staff, inmate population and community, as well as [McCoy's] disregard for the authority of Correctional staff, the rules and regulations of the facility and the Department as a whole."[42] The Restrictive Status Report of Hearing for Placement or Removal form states that the reason for the recommendation of placement on administrative segregation is because "Inmate McCoy engaged in disorderly conduct which severely interfered with the normal operations of the facility, posed a threat to the security of the facility and a risk to the safety of staff and other inmates."[43] This section of the form is signed by defendant Officer Tugie, who served as the hearing officer for McCoy's administrative segregation hearing.[44]

While McCoy does not allege that his placement on administrative segregation was

---

[41] Doc. #14-1 at 28.

[42] *Ibid.*

[43] *Id.* at 30.

[44] *Ibid.*

punitive or disciplinary in nature, my review of the forms produced by DOC regarding the
hearing indicate that at least part of the reason for McCoy's placement on administrative
segregation may have been to discipline or punish McCoy for his alleged involvement in the
hunger strike, in addition to the administrative concerns about prison safety. Accordingly, I will
assume without deciding for the purposes of this initial review order that *Wolff*'s requirements
that an inmate be allowed to call witnesses and present documentary evidence in his defense
when permitting him to do so will not be unduly hazardous to institutional safety or correctional
goals applies to McCoy's claim.

McCoy alleges that he both requested three witnesses to testify in his defense and that the
video from the camera pointed at his bunk be reviewed because that video evidence would
allegedly show that Captain Ibes's statement was false. McCoy alleges that he was not given the
opportunity to call these witnesses or to present this video evidence. McCoy has therefore
plausibly alleged a violation of procedural due process with regards to the administrative
segregation hearing. Accordingly, I will allow McCoy's administrative segregation due process
claim to proceed.

### *Personal involvement*

The Second Circuit has recently clarified the standard for supervisory liability and ruled
that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove
'that each Government-official defendant, through the official's own individual actions, has
violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting
*Iqbal*, 556 U.S. at 676).

According to McCoy's allegations, only some of the defendants were involved in the
administrative segregation hearing and the related failure to allow McCoy to call witnesses or

present video evidence. On the face of McCoy's amended complaint, it does not appear that defendants Caron, Ibes, Ouellette, Canales, Grimaldi, Cieboter, and Maiga were involved in the due process violations that allegedly occurred in relation to his administrative segregation hearing or appeal. McCoy does allege that defendant Warden Caron was responsible for the recommendation that McCoy be placed on administrative segregation, leading to the hearing,[45] but McCoy's allegations challenge the procedures used in the hearing itself, not the decision to have a hearing in the first place. Defendants Leone and Clark were allegedly involved in McCoy's search for his three witnesses, as McCoy alleges he gave the three names to Officer Leone and that Officer Clark claimed that the three had already been discharged. Defendants Tugie and Riccio were the hearing officer and recorder, respectively, in McCoy's administrative segregation hearing where McCoy requested his three witnesses and the video evidence and his request was denied. McCoy's amended complaint does not name who his "advisor" was, but his original complaint makes clear that both Officer LaPrey and Counselor T. Blue served as his advisor at different times. Only Counselor T. Blue appeared to serve as McCoy's advisor for his administrative segregation hearing but allegedly failed to meet with McCoy or even attend the hearing.[46] However, McCoy does not name Counselor T. Blue as a defendant in either his original complaint or his amended complaint. Because I am only allowing McCoy's due process claim as to the administrative segregation hearing to go forward, I will dismiss the claims against defendants Caron, Ibes, Ouellette, Canales, Grimaldi, Cieboter, Maiga, and LaPrey and will allow the claims against defendants Leone, Clark, Tugie, and Riccio to go forward.

---

[45] Doc. #14-1 at 3.

[46] Doc. #1 at 10-11 (¶ 14).

McCoy also alleges that defendants Quiros, Mulligan, and Saunders rejected his administrative segregation appeals.[47] One of McCoy's appeals raise both issues of the three witnesses and the video evidence, but it is unclear who signed the denial of the appeal.[48] Defendant Saunders rejected a second appeal from McCoy that does not mention either of those issues because McCoy's first appeal was already denied.[49] Defendant Mulligan rejected a third appeal from McCoy that also does not mention either issue, though the reason listed does state that a "thorough review of the circumstances and documentation reported by Captain Ibes" was conducted and that it was determined that McCoy "me[t] the criteria for Administrative Segregation placement."[50] Defendant Quiros's name does not appear on any of these appeals, though McCoy alleges that he denied one of McCoy's appeals.

At least one district court post-*Tangreti* has held that a plaintiff who alleges that a defendant who denied his administrative segregation appeal has sufficiently alleged that defendant's personal involvement in the plaintiff's due process claim, reasoning that the defendant should have reviewed the hearing documents and ensured that plaintiff's due process rights were not violated. *See Muniz v. Cook*, 2021 WL 1617162, at *3 (D. Conn. 2021). I will allow McCoy's due process claim against defendants Mulligan and Saunders to go forward, but will dismiss McCoy's claim against defendant Quiros as McCoy only makes one conclusory allegation about Quiros's involvement in his administrative segregation appeal, and it does not appear from the documents McCoy attached as exhibits to his amended complaint that Quiros was involved in the three denials.

---

[47] Doc. #14-1 at 2-3, 5.

[48] *Id.* at 42.

[49] *Id.* at 50-52.

[50] *Id.* at 53.

14

*Official and individual capacity*

McCoy brings his due process claim against defendants Leone, Clark, Tugie, Riccio, and Saunders in their individual capacity and against defendant Mulligan in his individual and official capacity. McCoy seeks injunctive relief and compensatory and punitive damages. State officials who are sued in their official capacities are immune under the Eleventh Amendment from federal court lawsuits for money damages. *See Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 122-23 (2d Cir. 2020). Accordingly, I will dismiss McCoy's claim for damages against Mulligan in his official capacity, but will otherwise allow McCoy's administrative segregation hearing due process claim to go forward against these six defendants. This ruling is without prejudice to any of the defendants' filing of a motion to dismiss if there are grounds to conclude that the complaint does not allege plausible grounds for relief.

## CONCLUSION

In accordance with the accompanying ruling, the Court enters the following orders:

(1) Defendant Anthony McCoy's procedural due process claim and state law claims relating to the administrative segregation hearing against defendants Leone, Clark, Tugie, Riccio, Saunders, and Mulligan shall proceed. All remaining claims and defendants are DISMISSED.

(2) The Clerk shall verify the current work addresses for the named defendants with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to those defendants at the confirmed addresses within twenty-one (21) days of this Order, and report to the Court on the status of the waiver requests by not later than the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on defendant Mulligan at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within twenty-one (21) days from the date of this Order and to file a return of service within thirty (30) days from the date of this Order. It is so ordered.

(4) All defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

(5) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) The discovery deadline is extended to six months (180 days) from the date of this Order. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this order. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(7) The deadline for summary judgment motions is extended to seven months (210 days) from the date of this Order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e. a motion to dismiss or a motion for summary judgment) within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

16

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 6th day of May 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge